**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **REGINA CLARK**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**BAYADA HOME HEALTH CARE, INC.**,<br><br>Defendants. | Case No.<br><br>**PROPOSED CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Regina Clark ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Bayada Home Health Care, Inc. ("Defendant"), alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

## INTRODUCTION

1. This Class Action arises from a cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2. Defendant provides a wide variety of healthcare services to its patients across the country.

3. In its regular course of business operation Defendant collects and maintains a substantial amount of personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") and has a resulting duty to ensure such information is safeguarded from unauthorized disclosure.

4. On March 2, 2026, Defendant identified a cybersecurity incident involving

unauthorized access to its network.[1] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.

5. Upon information and belief, the following types of Private Information were compromised as a result of the Data Breach: Social Security number, date of birth, and employer assigned identification number.[2]

6. On July 17, 2026, Defendant mailed notice letters to individuals impacted in the Data Breach ("Notice Letter").

7. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to implement reasonable an adequate security safeguards; failed to adequately train its employees on cybersecurity; failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the Private Information of Plaintiff; and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information —rendering it an easy target for cybercriminals.

8. Defendant's Notice Letter obfuscates the nature of the breach and the threat it posed—refusing to tell its employees and patients how many people were impacted, how the breach happened and how long the breach lasted, whether Defendant paid a ransom, what remedial measures Defendant took in response to the breach, or why it took the Defendant as long as it did to finally issue notice that cybercriminals had gained access to Plaintiff and Class Members highly private information.

9. Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to

---

[1] *See* Plaintiff's Notice Letter, attached as **Exhibit A**.
[2] *Id.*

prevent unauthorized use of their Private Information.

10. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of Private Information misuse.

11. In failing to adequately protect its employees and patients' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed thousands of its current and former employees and patients.

12. Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Private Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

13. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

14. Plaintiff seeks on behalf of herself and the Class, monetary damages and injunctive relief including lifetime credit monitoring and ID theft monitoring.

## PARTIES

15. Plaintiff is a natural person and citizen of Ozark, Missouri, where she intends to remain.

16. Defendant is a New Jersey corporation with its principal place of business located at 4300 Haddonfield Road, Pennsauken, New Jersey, 08109.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this action under the Class Action Fairness Act, 28

U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the Class is comprised of thousands of members, many of whom are citizens of a different states than Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A).

18. This Court has personal jurisdiction over Defendant because Defendant is registered to do business in this District and maintains its principal place of business in this District.

19. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**BACKGROUND**

***Defendant Collected and Stored the Private Information of Plaintiff and the Class***

20. Defendant provides a wide variety of healthcare services to its patients across the country.

21. In collecting and maintaining its patients' and employees' Private Information Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Private Information.

22. Defendant understood the need to protect patients' and employees' Private Information and prioritize its data security.

23. Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect the Private Information of its patients, employees, or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for

cybercriminals to exploit and gain access to patients' and employees' Private Information.

***Defendant Failed to Safeguard the Private Information of Plaintiff and the Class***

24. On or around March 2, 2026, Defendant identified a cybersecurity incident involving unauthorized access to its network.[3] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.

25. Upon information and belief, the following types of Private Information were compromised as a result of the Data Breach: Social Security number, date of birth, and employee assigned identification number.[4]

26. On or around July 17, 2026, Defendant issued Notice Letters to individuals impacted in the Data Breach. [5]

27. The Notice Letter reveals the Data Breach occurred between February 18, and March 2, 2026, yet Defendant waited approximately four months to notify impacted individuals. [6]

28. The Data Breach shows Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of its patients' and employees' highly private information.

29. Despite its duties to safeguard Private Information, and despite the fact Defendant's computer network has been breached before, Defendant did not in fact follow industry standard practices in securing its patients' and employees' Private Information, as evidenced by the Data Breach.

30. Moreover, companies should retain personal data only as necessary, with legal

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

justification. Personal data should not be stored beyond the time necessary to achieve its initial purpose of collection.

31. On information and belief, Defendant failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' and employees' Private Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach, and to stop cybercriminals from accessing the Private Information it stored in its network.

32. Furthermore, Defendant's Notice Letter obfuscates the nature of the breach and the threat it posed—refusing to tell its patients and employees how many people were impacted, how the breach happened and how long the breach lasted, when Defendant discovered the breach, when Defendant started and ended its investigation, whether Defendant paid a ransom, what remedial measures Defendant took in response to the breach, or why it took the Defendant over a year before it finally began notifying victims that cybercriminals had gained access to their highly private information.

***<u>Defendant Knew—or Should Have Known—of the Risk of a Data Breach</u>***

33. It is well known that Private Information is an invaluable commodity and a frequent target of hackers.

34. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years. In light of past high profile data breaches at industry-leading companies, including, for example, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or, if

acting as a reasonable business, should have known that the Private Information it collected and maintained would be vulnerable to and targeted by cybercriminals.

35. In fact, out of twenty industries that were analyzed, the healthcare industry is number eleven for highest count of ransomware attacks from January 2022 to January 2023.[7]

36. In 2024, a 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[8]

37. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[9]

38. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in the finance industry, including Defendant.

39. Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

40. This readily available and accessible information confirms that, prior to the Data

---

[7] *Ransomware Statistics: Who is targeted the most?* NORDLOCKER, https://nordlocker.com/ransomware-attack-statistics/ (last visited July 25, 2026).
[8] *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter. org/publication/2024-data-breach-report/ (last visited July 25, 2026).
[9] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited July 25, 2026).

Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

41. In light of the information readily available and accessible before the Data Breach, Defendant, knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Private Information could be accessed, exfiltrated, and published as the result of a cyberattack. Data breaches are so prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

***<u>Plaintiff's Experience and Injuries</u>***

42. At all times relevant, Plaintiff was an employee of Defendant and a data breach victim.

43. As a condition of receiving employment, Defendant required Plaintiff to provide her Private Information.

44. Plaintiff provided her Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

45. Additionally, Plaintiff reasonably expected that her personal information would be destroyed once her treatment from Defendant ended.

46. As a result of its inadequate cybersecurity measures and data destruction policies, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and given the purpose of the hack, for sale on the Dark Web.

47. Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Data Breach.

48. Plaintiff suffered actual injury from the exposure of her Private Information — which violates her rights to privacy.

49. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

50. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate its impact, including but not limited to researching the Data Breach, reviewing credit card and financial account statements and monitoring her credit information, just as Defendant instructed her to do.

51. Plaintiff will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

52. And in the aftermath of the Data Breach, Plaintiff has suffered from a spike in spam and scam emails, text messages, and emails. Some of the emails she has received are especially concerning because they regard collecting debts that she did not incur.

53. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties. This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Breach.

54. Once an individual's Private Information is for sale and access on the Dark Web,

cybercriminals are able to use the stolen and compromised to gather and steal even more information.[10] Plaintiff's Private Information was compromised as a result of the Data Breach.

55. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

56. Plaintiff also has a continuing interest in lifetime credit monitoring and identity theft monitoring on account of the Data Breach.

***Plaintiff and the Class Suffered Common Injuries and Damages Due to Defendant's Conduct***

57. Defendant's failure to implement or maintain adequate data security measures for Plaintiff's and Class Members' Private Information directly and proximately injured Plaintiff and Class Members by the resulting disclosure of their Private Information in the Data Breach.

58. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, inter alia, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. identity theft and fraud;

b. loss of time to mitigate the risk of identity theft and fraud;

c. diminution in value of their Private Information;

d. out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

e. lost benefit of the bargain and opportunity costs and wages from spending

[10] *What do Hackers do with Stolen Information,* AURA, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited July 25, 2026).

time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. loss of the opportunity to control how their Private Information is used;

h. compromise and continuing publication of their Private Information;

i. unauthorized use of their stolen Private Information;

j. invasion of privacy; and

k. continued risk to their Private Information—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

***Significant Risk of Continued Identity Theft***

59. Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

60. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201 (2013).

61. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id.*

62. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information.

Criminals monetize the data by selling the stolen information on the internet black market (aka the dark web) to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

63. The dark web is an unindexed layer of the internet that requires special software or authentication to access.[11] Criminals in particular favour the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[12] This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

64. The unencrypted Private Information of Plaintiff and Class Members has or will end up for sale on the dark web because that is the modus operandi of hackers. In addition, unencrypted and detailed Private Information may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Plaintiff's and Class Members' Private Information.

65. The value of Plaintiff's and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years and is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained. criminals frequently post and sell stolen information openly and directly on the "dark web"—further exposing the information.

---

[11] *What Is the Dark Web?* EXPERIAN, available at https://www.experian.com/blogs/ask-experian/what-isthe-dark-web/ (last visited July 25, 2026).
[12] *Id.*

66. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

67. Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

68. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

69. Identity thieves can also use an individual's personal data and Private Information to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[13]

70. One example of criminals piecing together bits and pieces of compromised Private

---

[13] *Identity Theft and Your Social Security Number,* SOCIAL SECURITY ADMINISTRATION, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf. (last visited July 25, 2026).

Information to create comprehensive dossiers on individuals is called "Fullz" packages.[14] These dossiers are both shockingly accurate and comprehensive. With "Fullz" packages, cybercriminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. For example, they can combine the stolen Private Information, and with unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

71. The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen Private

[14] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.,* Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm,* KREBS ON SECURITY (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/ medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm (last visited July 25, 2026).

Information is being misused, and that such misuse is fairly traceable to the Data Breach.

72. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[15]

73. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[16] Yet, Defendant failed to rapidly report to Plaintiff and the Class that their Private Information was stolen. Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

74. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

75. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

76. Further complicating the issues faced by victims of identity theft, data thieves may

---

[15] *2019 Internet Crime Report* (Feb. 11, 2020) FBI.GOV, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited July 25, 2026).
[16] *Id.*

wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

***Loss of Time to Mitigate the Risk of Identify Theft and Fraud***

77. As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

78. In the event that Plaintiff and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record.

79. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate that harm.

80. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

81. These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud

alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[17]

82. Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct that caused the Data Breach.

***Diminished Value of Private Information***

83. Personal data like Private Information is a valuable property right.[18]

84. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

85. An active and robust legitimate marketplace for personal information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[19]

86. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and

---

[17] *See Federal Trade Commission*, IDENTITYTHEFT.GOV, https://www.identitytheft.gov/Steps (last visited July 25, 2026).

[18] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII/PHI") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII/PHI, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted) (last visited July 25, 2026).

[19] *Shadowy data brokers make the most of their invisibility cloak* (Nov. 5, 2019) LA TIMES, https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last visited July 25, 2026).

provides it to marketers or app developers.[20] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60 a year.[21]

87. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and black markets, has been damaged and diminished in its value by its unauthorized and likely release onto the dark web, where holds significant value for the threat actors.

88. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

***Future Cost of Credit and Identify Theft Monitoring is Reasonable and Necessary***

89. To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered due to the Data Breach.

90. Given the type of targeted attack in this case and sophisticated criminal activity, the type of information involved, and the modus operandi of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes— e.g., opening bank accounts in the victims' names to make purchases or to launder money; filing false tax returns; taking out loans or insurance; or filing false unemployment claims.

91. Such fraud may go undetected until debt collection calls commence months, or even

[20] *The Personal Data Revolutaion,* DATA COUP, https://datacoup.com/ *and How it Works,* DIGI.ME, https://digi.me/what-is-digime/ (last visited July 25, 2026).
[21] *Frequently Asked Questions*, NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited July 25, 2026).

years, later. An individual may not know that her or her information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

92. Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel their cards and request a replacement.[22]

93. The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

94. Consequently, Plaintiff and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future.

95. The retail cost of credit monitoring and identity theft monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

***Lost Benefit of the Bargain***

96. Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain.

97. When agreeing to provide their Private Information, which was a condition

[22] Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds,* FORBES (Mar. 25, 2020), https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-securitynumber-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last visited July 25, 2026).

precedent to obtain medical services from Defendant, Plaintiff and Class Members, as patients and employees, understood and expected that they were, in part, paying for services and data security to protect the Private Information they were required to provide.

98. Plaintiff values data security. Indeed, data security is an important consideration of seeking medical services.

99. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[23] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[24]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[25]

c. 89% of consumers stated that "I care about data privacy."[26]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[27]

e. 51% of consumers revealed that "I have switched companies or providers

---

[23] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited July 25, 2026).
[24] *Id*. at 3.
[25] *Id*.
[26] *Id*. at 9.
[27] *Id*.

over their data policies or data-sharing practices."[28]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[29]

100. Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services of a lesser value than what they reasonably expected to receive under the bargains struck with Defendant.

***Defendant Could Have Prevented the Data Breach***

101. Data breaches are preventable.[30] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[31] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[32]

102. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [33]

103. In a Data Breach like the one here, many failures laid the groundwork for the Breach.

[28] *Id*.
[29] *Id*. at 11.
[30] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[31] *Id.* at 17.
[32] *Id.* at 28.
[33] *Id.*

104. For example, the FTC has published guidelines that establish reasonable data security practices for businesses. The guidelines also emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

105. Additionally, several industry-standard best practices have been identified that—at a minimum—should be implemented by businesses like Defendant.

***Defendant Failed to Adhere to FTC Guidelines***

106. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

107. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

108. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

109. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

110. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

111. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' and employees' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

128. Experts studying cybersecurity routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

129. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees regarding cybersecurity; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

130. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email

management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

131. Moreover, companies should retain personal data only as necessary, with legal justification. Personal data should not be stored beyond the time necessary to achieve its initial purpose of collection. In line with industry standard practices, Defendant should have promptly deleted any data it no longer needed to provide services to Plaintiff and the Class.

132. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

133. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

***Defendant Violated HIPAA***

134. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[34]

---

[34] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

135. The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security

incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

136. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

**CLASS ACTION ALLEGATIONS**

142. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach and received a Notice Letter (the "Class").

143. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including its staff and immediate family.

144. Plaintiff reserves the right to amend the class definition.

145. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide basis using the same evidence as

would be used to prove those elements in individual actions asserting the same claims.

146. This action satisfies the numerosity, commonality, typicality, and adequacy requirements.

147. **Numerosity.** The Class members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes thousands of members.

148. **Commonality and Predominance.** Plaintiff's and the Class Members' claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant was negligent in maintaining, protecting, and securing Private Information;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's Private Information;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

149. **Typicality.** Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

150. **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's common interests. her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

151. **Appropriateness.** The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

152. **Ascertainability.** All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some victims and sent them data breach notices.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

153. Plaintiff incorporates paragraphs 1 through 153 above as if fully set forth herein.

154. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information

to unauthorized third parties.

155. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

156. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

157. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff's and Class Members' Private Information.

158. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

159. Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class

Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

160. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

161. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

162. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining medical services from Defendant.

163. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

164. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

165. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time

of the Data Breach.

166. Defendant breached these duties as evidenced by the first and second Data Breach.

167. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff 'and Class Members' Private Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

168. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the Private Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury.

169. Defendant further breached its duties by failing to provide a reasonable and timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

170. Defendant has admitted that the Private Information of Plaintiff and the Class was accessed by an intruder to its systems.

171. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

172. Defendant's breach of its common-law duties to exercise reasonable care and its

failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

173. Plaintiff incorporates paragraphs 1 through 153 above as if fully set forth herein.

174. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

175. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive Private Information.

176. Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

177. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given

the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

178. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

179. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

180. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

181. Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

182. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

183. Plaintiff incorporates paragraphs 1 through 153 above as if fully set forth herein.

184. Defendant offered to provide services to Plaintiff and members of the Class if, and in exchange, Plaintiff and members of the Class provided Defendant with their Private

Information.

185. In turn, Defendant agreed it would not disclose the Private Information it collects to unauthorized persons.

186. Plaintiff and the members of the Class accepted Defendant's offer by providing Private Information to Defendant in exchange for Defendant's services or employment.

187. Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

188. Plaintiff and the members of the Class would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

189. Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusions into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

a. Failing to properly safeguard and protect Plaintiff's and members of the Class's Private Information;

b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c. Failing to ensure the confidentiality and integrity of electronic Private Information that Defendant created, received, maintained, and transmitted.

190. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

191. Plaintiff and members of the Class have performed under the relevant agreements,

or such performance was waived by the conduct of Defendant.

192. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

193. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

194. Defendant failed to advise Plaintiff and members of the Class whether there were two data breaches or a month long breach, and failed to send Notice to the victims promptly and sufficiently.

195. In these and other ways, Defendant violated its duty of good faith and fair dealing.

196. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

197. Plaintiff, on behalf of herself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**<u>FOURTH CAUSE OF ACTION</u>**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

198. Plaintiff incorporates paragraphs 1 through 153 above as if fully set forth herein.

199. Upon information and belief, Defendant funds its data security measures from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

200. As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

201. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased services from Defendant and/or its agents and in so doing provided Defendant or its agents with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their Private Information protected with adequate data security.

202. Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

203. Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying Defendant as part of Defendant rendering services, a portion of which was to have been used for data security measures to secure Plaintiff's and Class Members' Private Information, and by providing Defendant with their valuable Private Information.

204. Defendant was enriched by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant

calculated to avoid the data security obligations at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

205. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

206. Defendant acquired the monetary benefit and Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

207. If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant either directly or through their own financial institutions.

208. Plaintiff and Class Members have no adequate remedy at law.

209. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate

and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

210. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm.

211. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## FIFTH CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

212. Plaintiff incorporates paragraphs1 through 153 above as if fully set forth herein.

213. Plaintiff and Class Members had a legitimate expectation of privacy regarding their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties by applicable laws set forth herein, including but not limited to, state and federal privacy and consumer protection statutes and New Jersey common law.

214. Defendant owed a duty to Plaintiff and Class Member to keep their Private Information confidential.

215. Defendant's implementation of inadequate data security measures, its failure to resolve vulnerabilities and deficiencies, and its abdication of its responsibility to reasonably protect data it required Plaintiff and the Class to provide and store on its own servers constitutes a violation

Plaintiff and the Class's right to privacy.

216. The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Private Information, is highly offensive to a reasonable person. It constitutes an invasion of privacy both by disclosure of nonpublic facts, and intrusion upon seclusion.

217. Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Private Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

218. Defendant's failure to protect Plaintiff's and Class Members' Private Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

219. Defendant knowingly did not notify Plaintiff's and Class Members in a timely fashion about the Data Breach.

220. Because Defendant failed to properly safeguard Plaintiff's and Class Members' Private Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

221. As a proximate result of Defendant's acts and omissions, the Private Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

222. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

223. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their Private Information. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

224. Plaintiff and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Private Information.

225. Plaintiff and Class Members seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

226. Plaintiff incorporates by reference paragraphs 1 through 153 above as if fully set forth herein.

227. Given the relationship between Defendant and Plaintiff and the Class Members, where Defendant became guardian of Plaintiff's and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' Private Information; (2) to timely notify Plaintiff and Class Members of the Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

228. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their

Private Information.

229. Because of the highly sensitive nature of the Private Information, Plaintiff and Class members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendant's position, to retain their Private Information had they known the reality of Defendant's inadequate data security practices.

230. Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' Private Information.

231. Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give adequate notice of the Data Breach within a reasonable and practicable time period.

232. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

233. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses (as detailed *supra*).

**SEVENTH CAUSE OF ACTION**
**Violation of the New Jersey Consumer Fraud Act**

**N.J.S.A. §§ 56:8 *et seq.***
**(On Behalf of Plaintiff and the Class)**

234. Plaintiff incorporates by reference paragraphs 1 through 153 above as if fully set forth herein.

235. Defendant violated New Jersey Consumer Fraud Act by, *inter alia*:

a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII, which was a direct and proximate cause of the Data Breach;

b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and industry standards, which was a direct and proximate cause of the Data Breach;

d. omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII; and

e. omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and industry standards.

236. The New Jersey Consumer Fraud Act defines merchandise as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."

N.J.S.A. § 56:8-1(c).

237. At all relevant times, Defendant advertised and sold goods and medical services that are merchandise within the meaning of the New Jersey Consumer Fraud Act.

238. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII.

239. Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its omissions.

240. Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business without adopting reasonable data security measures and comply with the law. Defendant accepted the PII that Plaintiff and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's omissions and representations in its privacy policy, the truth of which they could not have discovered through reasonable investigation.

241. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class Members' rights.

242. Under the New Jersey Consumer Fraud Act, the following qualifies as an unlawful practice:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

N.J.S.A. § 56:8-2.

243. In enacting the Identity Theft Prevention Act ("ITPA"), N.J.S.A. 56:8-161 to -166.3, which among other things, amended the New Jersey Consumer Fraud Act, the New Jersey Legislature found that "[i]dentity theft is an act that violates the privacy of our citizens and ruins their good names: victims can suffer restricted access to credit and diminished employment opportunities, and may spend years repairing damage to credit histories." N.J.S.A. § 56:11-45.

244. At all relevant times, Defendant conducted business in New Jersey and collected Private Information from New Jersey residents within the meaning of the ITPA.

245. Defendant violated the ITPA by failing to disclose the Data Breach in the most expedient time possible and without unreasonable delay to: (i) customers, (ii) The New Jersey State Police, and (iii) Consumer Reporting Agencies, in violation of N.J.S.A. 56:8-163(a), N.J.S.A. 56:8-163(c)1, and N.J.S.A. 56:8-163(f).

246. Defendant's failure to safeguard Private Information and its promises to do so constitutes an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation because Defendant knew that it had not adopted adequate electronic or physical safeguards to protect Private Information. More specifically, Plaintiff alleges that Defendant failed to implement and maintain reasonable security practices to protect Private Information, failed to store Private Information in a way that maximized its security and confidentiality, and permitted or failed to prevent the disclosure of Private Information.

247. Plaintiff and Class Members had a reasonable expectation that their Private Information would be protected and the failure to do so constitutes an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation in violation of N.J.S.A. § 56:8-2.

248. Defendant had a duty to advise Plaintiff and Class Members that its data security was inadequate, and by not doing so, concealed, suppressed, or omitted material facts.

249. Defendant intended for Plaintiff and the members of the proposed Class to rely upon the concealment, suppression, or omission of material fact relating to its data security.

250. Plaintiff and Class Members had a reasonable expectation that data security was adequate when they provided their Private Information to Defendant.

251. Plaintiff and Class Members would not have conducted business with or provided their Private Information as required to Defendant if it had not concealed, suppressed, or omitted the material fact relating to its data security.

252. Defendant's actions constitute a knowing, concealment, suppression, or omission in violation of N.J.S.A. § 56:8-2. As a result of the foregoing, Plaintiff and Class Members suffered and will continue to suffer ascertainable losses and other damages as described in detail herein and are entitled to treble damages as provided by N.J.S.A. § 56:18-19.

253. Further, Defendant failed to destroy stale records in violation of N.J.S.A. § 56:8-162, which requires that a business "destroy, or arrange for the destruction of, a customer's records within its custody or control containing personal information, which is no longer to be retained by the business or public entity, by shredding, erasing, or otherwise modifying the personal information in those records to make it unreadable, undecipherable or nonreconstructable through generally available means." N.J.S.A. § 56:8-162.

254. The New Jersey Consumer Fraud Act provides that it is "an unlawful practice and a violation of P.L. 1960, c. 39 (c. 56:8-1 *et seq*.) to willfully, knowingly or recklessly violate" Sections 56:8-161-164 of that Act.

255. In violation of N.J.S.A. § 56:8-162, Defendant retained its former patients or

employees' Private Information in an unprotected and unsecure manner.

256. There are technologies available and programs that can be implemented that automatically wipe information when an event occurs ending the individual's relationship with the entity at issue. Because Defendant failed to employ any technologies to protect or destroy the Private Information at issue, it has violated § 56-8-162 of the New Jersey Consumer Fraud Act.

257. As a result of the foregoing, Plaintiff and Class Members suffered and will continue to suffer ascertainable losses and other damages as described herein and are entitled to treble damages as provided by N.J.S.A. § 56:18-19.

258. In addition, Defendant failed to expediently notify victims following the Data Breach in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq*.

259. Section 56:8-163 of the New Jersey Consumer Fraud Act requires that a business conducting business in New Jersey:

> shall disclose any breach of security of those computerized records following discovery or notification of the breach to any customer who is a resident of New Jersey whose personal information was, or is reasonably believed to have been, accessed by an unauthorized person. The disclosure to a customer shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subsection c. of this section, or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

N.J.S.A. § 56:8-163.

260. The New Jersey Consumer Fraud Act defines a breach of security as follows:

> "Breach of security" means unauthorized access to electronic files, media or data containing personal information that compromises the security, confidentiality or integrity of personal information when access to the personal information has not been secured by encryption or by any other method or technology that renders the acquisition of personal information by an employee or agent of the business for a legitimate business purpose is not a breach of security, provided that the personal information is not used for a purpose unrelated to the business or subject to further unauthorized disclosure.

N.J.S.A. § 56:8-161. The Data Breach constituted a breach of security.

261. Defendant's disclosure regarding the Data Breach to Plaintiff and Class Members is delayed and not made in the most expedient time possible.

262. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

263. And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

264. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by the law.

## EIGHTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

265. Plaintiff incorporates by reference paragraphs 1 through 153 above as if fully set forth herein.

266. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

267. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff

alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

268. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendant's breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

269. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

270. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

271. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

272. If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

273. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of all others similarly situated, prays for relief as follows:

a. For an order certifying the Class, and naming Plaintiff as representatives of the Class, and Plaintiff's attorneys as Class Counsel;

b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c. For damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Declaratory and injunctive relief as described herein;

f. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses as otherwise allowed by law;

g. Awarding pre- and post-judgment interest on any amounts awarded; and

h. Awarding such other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all claims so triable.

Dated: July 25, 2026

By: */s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
**KOPELOWITZ OSTROW P.A.**
65 Overhill Rd
Bala Cynwyd, PA 19004
Tel: (954) 525-4100
grunfeld@kolawyers.com

*Counsel for Plaintiff and the Proposed Class*